UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Nison Donets,

Petitioner,

vs.

J.S. Walton,
Associate Warden,

Respondent.                    Civ. No. 05-2899 (RHK/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, see Title 28 U.S.C. §2241, which alleges that the Federal Bureau of Prisons ("BOP") has wrongly denied the Petitioner's request to be transferred to a Community Corrections Center ("CCC"), pursuant to Title 18 U.S.C. § 3621.  The Petitioner has appeared pro se, and the Respondent has appeared by Tricia A. Tingle, Assistant United States Attorney.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be granted.[1]

## II.  Factual and Procedural Background

The Petitioner is currently incarcerated at the Federal Prison Camp, in Duluth, Minnesota ("FPC-Duluth").  See, Petition for Writ of Habeas Corpus ("Petition"), at 2; Declaration of Angela Buege ("Buege Decl."), at ¶3.  On May 11, 2005, the Petitioner was sentenced by the United States District Court for the Eastern District of Wisconsin to a seventeen (17) month sentence for making False or Fraudulent Claims, in violation of Title 7 U.S.C. §§2 and 287.  See, Petition, at 2; Buege Decl.,

---

[1]Also before this Court is the Petitioner's Motion to Expedite the handling of this Case.  Notably, the Respondent has not filed any response to the Petitioner's Motion to Expedite, nor does the Respondent present any evidence to suggest that expedition is not appropriate.  We recognize that a Court has "great latitude in carrying out its case-management functions" Crigler v. Robbins, 26 F.3d 126, 1994 WL 203362 at *1 (8th Cir. 1994)[table disposition], citing Jones v. Winnepesaukee Realty, 990 F.2d 1 (1st Cir. 1993); see also, Title 28 U.S.C. §1657(a)("Notwithstanding any other provision of law, each court of the United States shall determine the order in which civil actions are heard and determined, except that the court shall expedite the consideration of any action brought under chapter 153 or section 1826 of this title, any action for temporary or preliminary injunctive relief, or any other action if good cause therefor is shown.").  Therefore, given that the Petitioner's release date is rapidly approaching, we find that the Petitioner has presented good cause, and accordingly, we grant the Petitioner's Motion to Expedite the disposition of the Case.

Att. A.   The Petitioner's projected release date is September 8, 2006, via good conduct time release.  Buege Decl., at ¶3.

The Petitioner has been informed that his CCC placement date would be established, pursuant to the  policies adopted by the BOP.  See, Declaration of Nison Donets ("Donets Decl."), Docket No. 2, at 2; Buege Decl., at ¶¶4-5; Att. B.  According to those policies, the earliest date that the Petitioner could be placed in a CCC is on July 26, 2006.  Buege Decl., at ¶5.

The Respondent argues that the Petitioner, pursuant to the policies and rules established by the BOP, is not eligible for release to a CCC, or to home confinement, until the last ten percent (10%)  of his sentence is remaining -- namely, not until July 26, 2006.  See, Response of the United States to Petitioner's Petition for Writ of Habeas Corpus, Docket No. 9, at 6.  However, the Petitioner challenges the validity of those BOP policies and rules, and contends that he requires six (6) months of CCC placement, and accordingly, has requested that his CCC placement date be changed to March of 2006.  Therefore, the Petitioner seeks immediate placement in a CCC.  See, Petitioner's Reply to Respondent's Opposition to Petition, Docket No. 13, at 3-4.

## III.  Discussion

The issues presented have been fully explored by several District Court decisions, in this District, which have upheld requests for Habeas relief on the grounds that have been urged by the Petitioner and, as of this date, the only Circuit Court to have examined the same issues, came to that same ruling.  See, Ikner v. Walton, 2006 WL 562150 (D. Minn., March 7, 2006)(Ericksen, J.); Young v. Caraway, 2006 WL 562143 (D. Minn., March 7, 2006)(Ericksen, J.); Ragsdale v. Caraway, 2006 WL 44017 (D. Minn., January 6, 2006)(Davis, J.); Threlkeld v. Morrison, Civ. No. 05-2604 (PAM/AJB)(Magnuson, J.); Hayek v. Caraway, 2005 WL 3334600 (D. Minn., December 7, 2005)(Magnuson, J.); Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3rd Cir. 2005); cf., Knish v. Stine, 347 F. Supp.2d 682 (D. Minn. 2004) (reasoning the same, but as to a prior BOP Regulation)(Davis, J.).   While we join in the views expressed by those Courts, in the interests of completeness, we address the issues in full.[2]

A.    Exhaustion of Administrative Remedies.  As of the date on which the Petitioner filed his Petition for Habeas relief, he had not fully exhausted, let alone

---

[2]In an unpublished Order, the Recommendation we make here has been adopted by a District Court in this District.  See, Tyler v. Caraway, Civ. No. 05-763 (MJD/ RLE)[Order dated February 27, 2006, Docket No. 22].

sought, any of his administrative remedies as to the issues raised in his Petition. However, the Petitioner argues that any such exhaustion would be futile, given the lengthy time requirements of a full administrative appeal, and that any such appeal would be denied based upon an official BOP policy. Donets Decl, at 3. In addressing the same argument, other Courts have concluded that exhaustion is futile under these circumstances. See, Ragsdale v. Caraway, supra at *3, citing United States v. Paige, 369 F. Supp.2d 1257 (D. Mont. 2005), Vargas-Crispin v. Zenk, 376 F. Supp. 2d 301, 303 (E.D.N.Y. 2005); see also, Elwood v. Jeter, 386 F.3d 842, 845 n.1 (8th Cir. 2004)(noting that the Government had waived the exhaustion requirement because it conceded that continued use of the grievance procedure to contest the validity of the BOP's policy would be futile). Accordingly, the Petitioner's failure to exhaust his administrative remedies is excused.

B.    Availability of Relief Under Title 28 U.S.C. §2241. Federal Habeas provides a remedy only for prisoners challenging the fact or duration of their custody, rather than the conditions of their confinement. See, Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996)("If the prisoner is not challenging the validity of his conviction or the length of his detention * * * then a writ of habeas corpus is not the proper remedy."); see also, Otey v. Hopkins, 5 F.3d 1125, 1130 (8th Cir. 1993)("The

- 5 -

central focus of the writ of habeas corpus is to provide a remedy for prisoners who are challenging the fact or duration of their physical confinement and are seeking immediate release or a speedier release."), cert. denied, 512 U.S. 1246 (1994); Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991)("Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement * * *[;] [a] civil rights action, in contrast, is the proper method of challenging 'conditions of ... confinement.'")[internal citation omitted].   Here, the Petitioner challenges not the conditions of his confinement, but instead, the underlying policies that determine where that confinement will take place.   As a consequence, the Respondent argues that a Habeas Petition, pursuant to Section 2241, is an inappropriate vehicle for pursuing the Petitioner's claims.

We note, however, that our Court of Appeals entertained a similar challenge to CCC placement, which was advanced under Section 2241, in Elwood v. Jeter, supra at 845.   In Elwood, the petitioner challenged a BOP policy that limited the discretion of the BOP in placing a prisoner in a CCC for all or part of his confinement.   Id. at 847.   The Court of Appeals entertained the petitioner's challenge on its merits, but did not expressly address the procedural propriety of the Petition under Section 2241.   A District Court, deciding a similar case in the aftermath of Elwood, noted that, "[s]ince

the Eighth Circuit has recently decided this similar §2241 claim on the merits, jurisdiction is presumed, and this Court is now obligated to exercise jurisdiction over [the petitioner's] petition for §2241 habeas corpus relief." See, Knish v. Stine, supra at 686. Other decisions, from this District, have followed suit. See, e.g., Ragsdale v. Caraway, supra at *4; Hayek v. Caraway, Civ. No. 05-1424 (PAM/JSM) at p. 5, adopted, Hayek v. Caraway, supra; Threlkeld v. Morrison, supra.

Moreover, the Court of Appeals for the Third Circuit thoroughly addressed the question, and found Section 2241 to be the appropriate vehicle for a challenge to a CCC placement, noting its agreement with the Second, Sixth, Ninth, and Tenth Circuits. See, Woodall v. Federal Bureau of Prisons, supra at 243; but see, Richmond v. Scibana, 387 F.3d 602 (7th Cir. 2004). Given the precedent provided by Elwood v. Jeter, supra, and the weight of authority in this District, and in five other Circuits, we are persuaded that the Petitioner has chosen an appropriate means to raise his challenge in this Court.

C.    The BOP Regulations and Underlying Statutory Authority. The BOP's authority to designate the location of an inmate's imprisonment is provided by Title 18 U.S. C. §3621(b), which enumerates five factors that the BOP, at a minimum, must

consider in making its ultimate determination on CCC placement, and which reads as follows:

(b)    Place of imprisonment. -- The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering --

(1)    the resources of the facility contemplated;

(2)    the nature and circumstances of the offense;

(3)    the history and characteristics of the prisoner;

(4)    any statement by the court that imposed the sentence --

(A)    concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B)    recommending a type of penal or correctional facility as appropriate; and

(5)    any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

- 8 -

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

Title 18 U.S.C. §3621(b).

Another statute, Title 18 U.S.C. §3624(c), addresses the housing of prisoners, who are nearing the end of their incarceration period, by providing as follows:

(c)     Pre-release custody. -- The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

Title 18 U.S.C. §3624(c).

Previously, it was common practice for the BOP to place a low-risk, nonviolent offender in a CCC, a halfway house, or some other form of "community confinement," instead of committing the offender to a Federal prison, pursuant to this

- 9 -

grant of authority.  See, <u>Community Confinement</u>, 70 <u>Fed. Reg.</u> 1659, 1659 (January

10, 2005)(codified at <u>Title 28 C.F.R. §570</u>);   <u>BOP Practice of Placing in CCC Certain</u>

<u>Offenders Who Have Received Sentences of Imprisonment</u> ("<u>OLC Opinion</u>"), 2002

WL 31940146 (December 13, 2002). This practice of CCC placement was considered

routine, and was not seriously contested by any party.  See, <u>United States v. Serpa</u>,

251 F. Supp. 2d 988, 990 (D. Mass. 2003)("These practices were entirely routine and

were all but taken for granted by all participants: the BOP, the Probation Office, the

U.S. Attorney's Office, the defense bar, and the judiciary.").

In response to a BOP inquiry, the Office of Legal Counsel for the United States

Department of Justice ("OLC") issued an Opinion on December 13, 2002, that

addressed the BOP's ability to place a prisoner in a CCC immediately after sentencing,

or at any time throughout the prisoner's sentence.  See, <u>OLC Opinion</u>.  The Opinion

concluded that the BOP lacked the general authority to place an offender, who had

been sentenced to a "term of imprisonment," into community confinement in a facility,

such as a CCC.  <u>Id</u>.  The Opinion also addressed "whether the BOP, either on its own

initiative or in response to a federal court recommendation, has general authority to

implement a * * * sentence of imprisonment by placing an offender in community

confinement."  <u>Id.</u> at 5.  The OLC concluded that the sole source of authority, for the

BOP's placement of a prisoner into a CCC, was derived from Section 3624(c), and therefore, the authority was limited to a placement that was the lesser of the last ten (10) percent of a prisoner's sentence, or the last six (6) months of the sentence. Id. at 6 n. 6 ("Your office has advised us that BOP, in exercising its authority under Section 3624(c), has sometimes not abided by the time limitation set forth in that section," but "[t]he authority conferred under section 3624(c) to transfer a prisoner to a non-prison site is clearly limited to a period 'not to exceed six months, of the last 10 per centum of the term to be served,' 18 U.S.C. §3624, and we see no basis for disregarding this time limitation.").

The United States Attorney General adopted the OLC's position on December 16, 2002, and on December 20, 2002, the BOP adopted both the Opinion of the OLC and the Attorney General, and instituted a policy that inmates could be released to a CCC only for the last ten (10) percent of their terms, or six (6) months, whichever was shorter. See, Elwood v. Jeter, supra at 845. Several District Courts upheld the newly promulgated BOP policy. See, e.g., Cohn v. Federal Bureau of Prisons, 2004 WL 240570 (S.D.N.Y., February 10, 2004); Benton v. Ashcroft, 273 F. Supp. 2d 1139 (S.D. Cal. 2003). Other Courts rejected it. See, e.g., Monahan v. Winn, 276 F.

Supp.2d 196 (D. Mass. 2003); <u>Iacoboni v. United States</u>, 251 F. Supp. 2d 1015 (D.

Mass. 2003); <u>Byrd v. Moore</u>, 252 F. Supp. 2d. 293 (W.D.N.C. 2003).

Our Court of Appeals addressed the BOP's adoption of that policy in <u>Elwood</u>

<u>v. Jeter</u>, supra.  In <u>Elwood</u>, the Court found that the BOP's placement policy was

based upon an erroneous interpretation of Sections 3621(b), and 3624(c), and

concurred with the similar analysis undertaken previously, in <u>Goldings v. Winn</u>, 383

F.3d 17 (1st Cir. 2004).  See, <u>Elwood v. Jeter</u>, supra at 845.  The Court held, in part:

> We hold, on the facts of this case, in which both parties
> agree that CCCs are places of imprisonment for the
> purposes of 18 U.S.C. § 3621(b), that § 3621(b) gives the
> BOP the **discretion to transfer prisoners to CCCs at any
> time during their incarceration**. Further, the BOP is
> required to place prisoners in "conditions that will afford
> [them] a reasonable opportunity to adjust to and prepare for
> the prisoner's re-entry into the community" during a
> reasonable part of the last ten percent of the prisoner's term,
> to the extent practicable. This duty shall not extend beyond
> the last six months of the prisoner's sentence.

<u>Id.</u> at 847 [emphasis added].

In <u>Elwood</u>, the Court focused on the inclusion of the term "shall," in Section 3624(c),

and construed that inclusion as imposing a qualified duty on the BOP to reintegrate the

prisoners, prior to their release, into society.  <u>Id.</u> at 846-47.  The Court found that the

affirmative duty, which was created by the use of the term "shall" in Section 3624(c),

- 12 -

did not conflict with, or otherwise restrict, the general grant of authority that was invested in the BOP by Section 3621(b).  Id. at 847.  Accordingly, the Court concluded that the language in Section 3621(b) imbued the BOP with the discretion to transfer a prisoner, "at any time," from one correctional facility to another, including a CCC -- thereby rendering the BOP's newly adopted policy invalid.  Id.; see also, Knish v. Stein, supra at  687-88 ("In light of Elwood, this Court declares the new BOP policy prohibiting assignment to a CCC until the last ten percent of a prisoner's sentence to be invalid.").  The First Circuit had already determined that the BOP's policy was invalid.  See, Goldings v. Winn, supra at 28-29.

In response to these decisions, which invalidated the policy, the BOP began the process of promulgating a new Rule, in keeping with the Note and Comment requirements of the Administrative Procedures Act ("APA"), that would, in effect, limit the CCC placement of prisoners to the lesser of the last six(6) months, or ten (10) percent of the sentence, in keeping with the BOP's categorical exercise of discretion. See, Community Confinement, 69 Fed. Reg. 51,213, 51,213 (August 18, 2004) (codified at Title 28 C.F.R. §570).

The proposed rule, which was adopted, and made final on February 14, 2005, provided, in part:

§570.20  What is the purpose of this subpart?

(a)    This subpart provides the Bureau of Prisons' (Bureau) **categorical exercise of discretion for designating inmates to community confinement**. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.

(b)    As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC)(also known as "halfway houses") and home confinement.

§ 570.21    When will the Bureau designate inmates to community confinement?

(a)    The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

(b)    We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance

- 14 -

abuse treatment program (18 U.S.C. §3621(e)(2)(A)),
or shock incarceration program (18 U.S.C. §4046(c))

See, <u>28 C.F.R. §§570.20-.21</u> (hereinafter, "the 2005BOP Rule")(emphasis added).

The BOP announced, in conjunction with the then-proposed rule, that:

> Because various courts have held that the Bureau has discretion under 18 U.S.C. 3621(b) to place offenders sentenced to a term of imprisonment in CCCs, the Bureau considers it prudent to determine how to exercise such discretion. Accordingly, the Bureau has considered how to exercise that discretion in a manner consistent with the text of Section 3621(b).

> \*   \*   \*

> Based on those considerations, the Bureau has determined to exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months.

> \*   \*   \*

> The Bureau will continue to make a case-by-case determination of the particular prison facility (i.e., non-community-confinement facility) to which it will designate each individual inmate.

<u>69 Fed. Reg. at 51,213.</u>

- 15 -

In sum, the 2005 BOP Rule recognized the BOP's discretionary authority to place prisoners in a CCC at any time, but elected to exercise that authority categorically so as to deny any prisoner the opportunity to serve any part of the imposed sentence, in a CCC, prior to the last ten (10) percent of the sentence, and then, not for any period of time which would exceed six (6) months.[3]  Id.

The BOP modeled its categorical exercise of discretion on the BOP rules that were challenged, and held to be valid by the Supreme Court, in Lopez v. Davis, 531 U.S. 230, 244 (2001)(upholding the BOP's categorical exercise of its discretion under Title 18 U.S.C. §3621(e)(2)(B)).  See, 70 Fed. Reg. 1661.  At issue in Lopez was the BOP's categorical exercise of discretion, under Title 18 U.S.C. §3621(e)(2)(B), in reducing the sentences of prisoners who had successfully completed a drug rehabilitation program, so long as the prisoner had been convicted of a "nonviolent offense."  See, Lopez v. Davis, supra at 238-44.  In order to give inmates an incentive to participate in the drug rehabilitation program, Congress authorized the BOP to grant

---

[3]As the language of the 2005 BOP Rule makes clear, the BOP did provide an exception for those prisoners who could serve additional time in community confinement, because of explicit statutory authority, such as in substance abuse treatment, or in shock incarceration programs.

sentence reductions of up to one (1) year for those who had successfully completed the program.  Id. at 233.  The relevant statute provided as follows:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

Title 18 U.S.C. §3621(e)(2)(B).

Congress did not define the term "prisoner convicted of a nonviolent offense," which would encompass the largest potential class of inmates who would be eligible for a sentence reduction.   Notably, Congress also did not codify any factors that the BOP should consider in its exercise of that discretion.

Pursuant to its vested statutory discretion, the BOP promulgated a rule by which an inmate, who was in possession of a firearm in connection with his or her committed offense, was categorically excluded from receiving the sentence reduction after completion of the drug rehabilitation program.  See, 28 C.F.R. §550.58(a)(1) (vi)(B) (2000).  The applicable rule  sets forth a listing of "[a]dditional early release criteria," in order to guide the BOP's discretion, and provides as follows, in part:

>    (1)    As an exercise of the discretion vested in the Director
>    of the Federal Bureau of Prisons, the following categories of
>    inmates are not eligible for early release:
>
>                         *    *    *
>
>    (vi)    Inmates whose offense is a felony:
>
>    (A)    That has as an element, the actual, attempted or
>    threatened use of physical force against the person or
>    property of another, or
>
>    (B)    That involved the carrying, possession, or use of a
>    firearm or other dangerous weapon or explosives (including
>    any explosive material or explosive device)

28 C.F.R. §550.58.

The final version of the Regulation was adopted on December 22, 2000.  See, 65 Fed.

Reg. 80,745 (2000).

In Lopez, the Supreme Court upheld the BOP's rule, pursuant to the  statutory

grant of authority.  See, Lopez v. Davis, supra at 241 ("When an eligible prisoner

successfully completes drug treatment, the Bureau thus has the authority, but not the

duty, both to alter the prisoner's conditions of confinement and to reduce his term of

imprisonment.").  The Court also rejected the prisoner's argument that the BOP was

required to make individualized determinations, noting as follows:

> The constraints [the prisoner] urges - requiring the BOP to make individualized determinations based on postconviction conduct - are nowhere to be found in §3621(e)(2)(B). Beyond instructing that the Bureau has discretion to reduce the period of imprisonment for a nonviolent offender who successfully completes drug treatment, Congress has not identified any further circumstances in which the Bureau either must grant the reduction, or is forbidden to do so.

Id. at 241-42.

In addition, the Court rejected the prisoner's argument, there, that "the agency must not make categorical exclusions, but may rely on only case-by-case assessments." Id. at 243. The Court held, that:

> "[E]ven if a statutory scheme requires individualized determinations," which this scheme does not, "the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability **unless Congress clearly expresses an intent to withhold that authority**."

Id. at 243-44, quoting American Hospital Association v. NLRB, 499 U.S. 606, 612 (1991)[emphasis added].

Here, the BOP maintains that the 2005 BOP Rule, which based its discretionary authority on Sections 3621(b), and 3624(c), must be treated with the same deference that the Supreme Court, in Lopez, applied to the BOP's categorical exercise of the discretion provided by Section 3621(e)(2)(B). The Petitioner argues, in contrast, that

the BOP impermissibly abdicated its discretionary authority by its promulgation, and application, of the 2005 BOP Rule.  See, <u>Donets Decl.</u>, at 4-7.

D.    <u>Judicial Review of the 2005 BOP Rule.</u>  After the adoption of the 2005 BOP Rule, numerous prisoners have petitioned the Federal Courts seeking Habeas relief.  Many of the Courts, which have substantively addressed the claims raised here, have framed the analysis according to the approach taken by the Supreme Court in <u>Lopez v. Davis</u>, supra at 243-44.

As noted, to this date, the Third Circuit is the only Appellate Court to have ruled on a Habeas challenge to the 2005 BOP Rule.  See, <u>Woodall v. Federal Bureau of Prisons</u>, supra.  Many District Courts, before <u>Woodall</u> did so, invalidated the Rule, including Courts in this District.  See, e.g., <u>Ragsdale v. Caraway</u>, supra;  <u>Hayek v. Caraway</u>, supra); <u>Smith v. Sanders</u>, 2005 WL 2875064 (E.D. Ark., October 27, 2005); <u>Lesnick v. Menifee</u>, 2005 WL 2542908 (S.D.N.Y., October 11, 2005); <u>Baker v. Willingham</u>, 2005 WL 2276040 (D. Conn., September 19, 2005); <u>Pimentel v. Gonzales</u>, 367 F. Supp.2d 365 (E.D.N.Y. 2005); <u>United States v. Paige</u>, supra; <u>Cook v. Gonzales</u>, 2005 WL 773956 (D. Or., April 5,   2005); <u>Drew v. Menifee</u>, 2005 WL 525449 (S.D.N.Y., March 4, 2005).

Other District Courts have upheld the BOP's adoption of the 2005 BOP Rule. See, e.g., <u>Harris v. Federal Bureau of Prisons</u>, 2005 WL 2562970 (D.N.J., October 6, 2005); <u>Morales v. Francis</u>, 2005 WL 2467691 (S.D.Tex., October 5, 2005); <u>Lee v. United States</u>, 2005 WL 2179796 (S.D. Ala., September 6, 2005); <u>Moss v. Apker</u>, 376 F. Supp.2d 416 (S.D.N.Y. 2005); <u>Yip v. Federal Bureau of Prisons</u>, 363 F. Supp. 2d 548 (E.D.N.Y. 2005).  Here, we find the analysis, and ruling, of the Third Circuit in <u>Woodall</u>, and in the decisions from this District, convincing.

In <u>Woodall</u>, a Sentencing Court entered an Order recommending that a prisoner spend the last six (6) months of his incarceration in a halfway house.  See, <u>Woodall v. Federal Bureau of Prisons</u>, supra at 238.  The prisoner was subsequently informed that he was eligible to spend no more than eleven (11) weeks in CCC placement, pursuant to the dictates of the 2005 BOP Rule.  <u>Id.</u>  The prisoner filed a Habeas Petition pursuant to Title 28 U.S.C. §2241, and argued that the 2005 BOP Rule "impermissibly ignored the placement recommendations of his sentencing judge" and, by following the dictates of the 2005 BOP Rule, wrongfully excluded him from the possibility of an earlier CCC placement.  <u>Id.</u> at 238-39.

After addressing the same procedural issues that we have addressed, here, the Court turned to the validity of the 2005 BOP Rule.  Id. at 244.  As explained by the Court:

> We agree with the reasoning of those courts that have found the regulations unlawful. The regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of §3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in §3621(b) for making placement and transfer determinations.

Id.

The Court also examined the plain meaning of Section 3621(b), and its accompanying legislative history.  The Court noted that the use of the term "may," at the beginning of Section 3621, referred to the ability of the BOP "to make ultimate placement designations," and not to the obligation of the BOP to consider the factors Congress listed in the statute.  Id. at 245.  The Court also noted the use of the term "and," before the last listed factor, mandated the BOP to weigh all of the factors before reaching a CCC placement decision.  Id., citing Lesnick v. Menifee, supra at *13.  The Court

- 22 -

concluded that the plain meaning of Section 3621 "indicates that the BOP **may** place

a prisoner where it wishes, **so long as** it considers the factors enumerated in §3621."

Id. [emphasis in original].

    In addressing the legislative history of Section 3621, the Court noted:

> In determining the availability or suitability of the facility
> selected, the Bureau is specifically required to consider such
> factors as the resources of the facility considered, the nature
> and circumstances of the offense, the history and
> characteristics of the prisoner, the statements made by the
> sentencing court concerning the purposes for imprisonment
> in a particular case, any recommendations as to type of
> facility made by the court, and any pertinent policy
> statements issued by the sentencing commission pursuant to
> proposed 28 U.S.C. § 994(a)(2). After considering these
> factors, the Bureau of Prisons may designate the place of
> imprisonment in an appropriate type of facility, or may
> transfer the offender to another appropriate facility.

> \*    \*    \*

> The Committee, by listing factors for the Bureau to consider
> in determining the appropriateness or suitability of any
> available facility, does not intend to restrict or limit the
> Bureau in the exercise of its existing discretion so long as the
> facility meets the minimum standards of health and
> habitability of the Bureau, but intends simply to set forth the
> appropriate factors that the Bureau should consider in
> making the designations.

Id., quoting "A Report of the Senate Judiciary Committee," S. Rep. No. 98-225, 98th Cong., 1st Sess. (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3324-25 (hereinafter, "Senate Judiciary Report").

The Woodall Court concluded that the legislative history directed the BOP to consider all of the listed factors, and that, since the 2005BOP Rule failed to do so, by being categorical in its approach, the Rule was invalid.  Id.

The Court also determined that the holding, in Lopez, was inapposite, as the statutory mandates of Section 3621(b) required consideration of all the enumerated individual factors, which specifically included the recommendations of the Sentencing Court.  In contrast, in Lopez, the Supreme Court found that Congress had not instructed the BOP to engage in "individual, rather than categorical, assessments of eligibility for inmates convicted of nonviolent offenses."  Id. at 246-47, quoting Lopez v. Davis, supra at 237.

While we recognize that some District Courts have reached a different result, we do not find their reasoning persuasive.  We adopt the reasoning of Woodall, and of the Courts of this District, as fully supported by the Court's analysis in Elwood v. Jeter, supra.

Here, we are persuaded by the Third Circuit, and the District Courts, that have similarly held that the 2005 BOP Rule should be ruled invalid.  Our reading of the plain language, and of the legislative history of Section 3621(b), reveals Congress' intent that the BOP is to consider each of the enumerated factors in exercising its discretion to place a prisoner in an appropriate BOP facility.  See, <u>Senate Judiciary Report</u>, supra at 3324 ("the Bureau is **specifically required** to consider such factors") [emphasis added]; see also, <u>Woodall v. Federal Bureau of Prisons,</u> supra at 246 ("Because the 2005 regulations do not allow the BOP to consider the factors enumerated in §3621, they are invalid."); <u>Hayek v. Caraway</u>, supra at *3 ("[T]he Court finds that the BOP did not and could not consider the remaining criteria required under Section 3621(b) when promulgating the February 2005 rules."); <u>Pimentel v. Gonzales</u>, supra at 375 ("[T]he legislative history indicates that BOP is specifically required to consider the factors set forth in Section 3621(b) prior to arriving at a determination regarding the appropriate facility for a given inmate."); <u>Drew v. Menifee,</u> supra at *5 ("[T]here is no inconsistency between recognizing the BOP's right to exercise its discretion on a categorical basis and requiring that it consider the factors Congress has specifically identified as relevant").

We also conclude that the holding in <u>Lopez</u> is inapposite, as Section 3621(b) explicitly enumerates the factors which the BOP must consider in exercising its

discretionary authority when making CCC placements.   In <u>Lopez</u>, the Supreme Court carefully noted that Section 3621(e)(2)(B) did not contain a listing of any factors that the BOP had to consider when exercising the authority at issue there.  See, <u>Lopez v. Davis</u>, supra at 241-42 ("The constraints Lopez urges -- requiring the BOP to make individualized determinations based on postconviction conduct -- are nowhere to be found in §3621(e)(2)(B).").  In contrast to <u>Lopez</u>, here, Congress elected to explicitly include the criteria the BOP must examine in CCC placements, including several which, by their fact-intensive nature, are necessarily unique to the individual prisoner's situation, and which may not be amendable to a categorical disposition, such as the recommendations of the Sentencing Court, the individual history and characteristics of the prisoner, and the nature and circumstances surrounding the offense.  See, <u>Title 18 U.S.C. §3621(b)</u>.

Accordingly, as previous Courts have reasoned, the uniqueness of each prisoner's situation, as coupled with Congress' intent, that at least the factors, which are expressly listed in Section 3621(b), must be considered in reaching CCC placement decisions, renders the 2005 BOP Rules invalid.  See, <u>Woodall v. Federal Bureau of Prisons</u>, supra at 248; <u>Hayek v. Caraway</u>, supra at *3 n. 3 ("In contrast [to the regulations at issue in <u>Lopez</u>], Section 3621(b) clearly requires the BOP to consider five

factors when designating a prisoner's place of confinement."); <u>Lesnick v. Menifee</u>, supra at *9-10; <u>Pimentel v. Gonzales</u>, supra at 374; <u>Baker v. Willingham</u>, supra at *6.

E.  <u>Deference to the BOP's Determination Under the Chevron Doctrine</u>. When faced with a challenge to an Administrative Agency's construction of a statute, which is implemented by that Agency, a Court must determine:  1) whether the language of the statute is ambiguous; and, if so 2) whether the agency's interpretation of the statute is reasonable.  See, <u>Chevron USA Inc. v. Natural Resources Defense Council Inc.</u>, 467 U.S. 837, 842-45 (1984).  "[W]here Congress has enacted a law that does not answer the precise question at issue, all [a Court] must decide is whether the [agency] * * * has filled the statutory gap in a way that is reasonable in light of the legislature's revealed design."  <u>Lopez v. Davis</u>, 531 U.S. 230, 242 (2001)[internal quotations omitted]; see also, <u>Zacher v. Tippy</u>, 202 F.3d 1039, 1044 (8th Cir. 2000) (holding that a Court must defer to an agency's interpretation, "as long as it is a permissible construction of the statute").  However, an agency is not entitled to any deference if Congress has unequivocally expressed its intent in the statute.  See, <u>Food and Drug Administration v. Brown & Williamson Tobacco Co.</u>, 592 U.S. 120, 125-26 (2000), citing <u>Chevron USA Inc. v. Natural Resources Defense Council Inc.</u>, supra at 842-43. Here, the Respondent argues that the BOP's interpretation of Section 3621(b), as memorialized

- 27 -

in the 2005BOP Rule, and as promulgated through a formal notice-and-comment process, is entitled to substantial deference. See, <u>Chevron USA Inc. v. Natural Resources Defense Council Inc.</u>, supra at 844.

We find, however, that the BOP's interpretation of Section 3621(b), as it has been expressed in the 2005BOP Rule, is not owed any deference under the <u>Chevron</u> analysis, for reasons thoroughly, and cogently explained by the Court of Appeals for the Third Circuit. See, <u>Woodall v. Federal Bureau of Prisons</u>, supra at 248-49 ("[C]onsidering the language of §3621(b) and finding support in the statute's legislative history, we believe that [Congress's intent] is [clear]."); <u>Hayek v. Caraway</u>, supra at *4 ("Because the February 2005 Rules disregard Congress's clear mandate that the BOP consider all five factors of Section 3621(b), the BOP's interpretation of the statute is entitled to no deference."); <u>Lesnick v. Menifee</u>, supra at *4 ("[T]his intent is clearly expressed in both the plain language of Section 3621(b) and the Senate Report accompanying it," and "[b]ecause Congressional intent can be discerned, deference to the BOP's interpretation of the statute is not appropriate.").

Furthermore, even if we found Section 3621 to be ambiguous, we would, nonetheless, still conclude that the BOP's interpretation was entitled to no deference,

under <u>Chevron</u>, as that construction is arbitrary and unreasonable.  In <u>Elwood v. Jeter</u>, supra at 846-47, our Court of Appeals recognized that the BOP had the discretion to place  prisoners in a CCC at any time. Therefore, a categorical denial of placement in a CCC, withheld until the last ten (10) percent, or six (6) months of a sentence, without any express consideration  of the individualized factors of Section 3621(b), would appear to be both arbitrary and unreasonable.   See, <u>Woodall v. Federal Bureau of Prisons</u>, supra at 249; <u>Hayek v. Caraway</u>, supra at *4; <u>Baker v. Willingham,</u> supra at *5-6.

Lastly, while the Petitioner appears to seek an immediate transfer to an appropriate CCC placement, that is not the recommendation we make, for the BOP is uniquely qualified to make such decisions in the first instance.  Cf., <u>Hosna v. Groose</u>, 80 F.3d 298, 303 (8th Cir. 1996), cert. denied, 519 U.S. 860 (1996)("[F]ederal courts ought to afford appropriate deference and flexibility to [prison] officials trying to manage a volatile [prison] environment," and "such flexibility is especially warranted in the fine tuning of the ordinary incidents of prison life," in order that the Courts do not "micro manage" prisons.), quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 482-83 (1995). Rather, we recommend that the Respondent should be ordered to make a good-faith determination as to whether, or when, the Petitioner be placed in a CCC given the

factors enumerated in Section 3621(b), and without any reference to the policies memorialized in the 2005BOP Rule.[4]  See, <u>Woodall v. Federal Bureau of Prisons</u>, supra at 251 ("[T]hat the BOP may assign a prisoner to a CCC does not mean that it must.").

NOW, THEREFORE, It is --

RECOMMENDED:

1.      That the Petitioner's Motion for Expedited Review [Docket No. 3] be granted.

2.      That the Petition for a Writ of Habeas Corpus, pursuant to Title 28 U.S.C. §2241 [Docket No. 1] be granted.

3.      That the Respondent be directed to reconsider the date when Petitioner should be assigned to a CCC, in light of the criteria set forth in Title 18 U.S.C. § 3621(b) and without regard to 28 C.F.R. §§ 570.20 and .21.

Dated:  March 16, 2006                          s/Raymond L. Erickson

                                                Raymond L. Erickson

_____

[4]As we recommend the grant of the Habeas Petition, we need not reach the other issues that the Petitioner has raised.

- 30 -

CHIEF U.S. MAGISTRATE JUDGE

# N O T I C E

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 31, 2006,** a writing which specifically identifies those portions of the Report to which objections are made and the bases for those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of the Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 31, 2006,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.